BENSONHURST NATIONAL BANK OF BROOKLYN, Appellant, *v.* THE CITY OF NEW YORK, Respondent, Impleaded with ADOLPH WEISS, Doing Business under the Firm Name of WEISS IRON WORKS, Defendant.

First Department, December 23, 1937.

*Isaac Reiss* of counsel [*Samuel Firestone*, attorney], for the appellant.

*James Hall Prothero* of counsel [*Paxton Blair* and *Nelson Rosenbaum* with him on the brief; *Paul Windels, Corporation Counsel*, attorney], for the respondent.

UNTERMYER, J. The important question to be decided on this appeal is whether claims for services and materials furnished in connection with " work relief " projects undertaken by a municipality under the Temporary Emergency Relief Act (Laws of 1931, chap. 798, as amd.) constitute a liability of the municipality or whether they constitute a liability of the State.

The plaintiff is the assignee of one Adolph Weiss who, between January and April, 1935, leased certain welding equipment, furnished supplies and rendered services pursuant to five contracts or " pur-

chase orders" purporting to be issued by the city of New York, through its purchasing department. All these contracts are identical in form and consist of an order on a form known as "T. E. R. A. Form 209." They bear the heading "Work Division — Purchase Order — Department of Purchase — City of New York," and contain instructions to "Please supply the following as directed. Prepare invoice in quintuplicate on TERA Form 211 enclosed and mail to Work Division, Department of Public Welfare." Then follows a description of the equipment to be supplied. At the upper corner there appears also a requisition number, a project number, type of project, and the notation "Fund T. E. R. A." The orders are signed by Henri Schwab "for Department of Purchase" under the word "Approved."

The referee to whom, by consent of the parties, the issues of law and fact were referred both to hear and determine, found in favor of the plaintiff on all the issues of fact but felt constrained to dismiss the complaint upon the ground that the liability was that of the State of New York and not a liability of the city. The determination of the question thus presented requires consideration of the provisions of the Emergency Relief Act (Laws of 1931, chap. 798), as amended, at the time the services were rendered and the materials supplied. From a consideration of that statute, we conclude that the city is liable.

The Emergency Relief Act provides for the furnishing of "work relief" and "home relief" by municipal corporations through "local bureaus" representing a State agency or administrative authority which is designated as the "temporary emergency relief administration." There are also provisions for work to be undertaken by that administration for the State (§ 18), with which, however, we are not directly concerned, since the services and materials furnished by Weiss were supplied on a project undertaken by the city of New York. It is to be observed, however, that, when undertaken for the State, supervision of the work is not delegated to any "local bureau."

By section 1 of the Emergency Relief Act the Legislature has found an emergency due to economic depression to exist and declares that, while the duty of providing aid for those in need or employed "is primarily an obligation of the municipalities," it is necessary "to supplement" the work of local relief and "to encourage and stimulate *local effort*" to that end. Among the definitions which then follow it is necessary only to observe subdivisions 1, 7 and 10 of section 2. Subdivision 1 defines the term "administration" as used in the act as a *State* agency to be known as the "temporary emergency relief administration." Subdivision 7

defines " work relief " to mean " wages paid by a municipal corporation *or* by the State " to persons who are inadequately employed. Subdivision 10 defines " State aid " to mean payments " to a municipal corporation or town " by the State for work or home relief furnished during the emergency.

The statute then proceeds to create the Temporary Emergency Relief Administration as a State agency, consisting of five persons to be appointed by the Governor (§ 3), and to define its powers (§§ 4, 5 and 8). For the purpose of " facilitating the administration of the provisions " of the act and " the distribution of the State aid " thereby provided, it creates public welfare districts throughout the State (§ 6). It creates also, by section 7, local bureaus whose members are to be appointed by the local authorities, to serve, however, at the pleasure of the Temporary Emergency Relief Administration. These local bureaus " represent the administration in their respective city and county welfare districts in providing work relief " and " shall in all matters be subject to the supervision, direction and control of the administration " (§ 8). The duties of the local bureaus are further defined in section 12, which in substance provides that, with the approval of the administration, they shall determine whether a particular project constitutes work relief; how the available employment shall be most equitably apportioned among the unemployed; the number of days in each week during which they shall be employed and the amount of compensation to be paid. Such local bureaus " shall pay such compensation, so fixed daily or otherwise, as it may determine, and shall conduct the work in accordance with such rules of the administration as will best secure the proper and equitable administration of the relief sought to be provided by this act " (§ 12).

We have so far considered the various agencies through which work relief is to be administered. We shall now consider the method by which it is to be supplied, which serves to convince us that, where it is supplied in connection with a State project, it constitutes a liability of the State and that, where supplied in connection with a municipal project, it constitutes a liability of the municipality. By section 18 the administration is authorized to expend such amount as it may deem necessary, within specified limitations, for employment on public improvements " undertaken or required *by the State*." By section 9 it is also provided, however, that, subject to the control of the administration, " *a municipal corporation* or the State *may furnish work relief* " and that a municipal corporation or a town may furnish home relief to persons in need thereof. Funds for such relief when furnished by a municipality may be secured as specified in section 10, which

provides that "the legislative body of a municipal corporation or town *may appropriate and make available sufficient money to pay for work relief and/or home relief.*" It may, but need not, "raise such money during the emergency period by interest bearing notes, certificates of indebtedness, bond or other obligations of such municipal corporation or town," payable in the manner specified in the statute. When funds are borrowed for the purpose of work relief, the proceeds "shall not be credited or deposited in the general fund of the municipal corporation or town but shall. be made available solely and exclusively for the relief purposes for which the said borrowings have been made." From whatever source the .funds may be derived, however, the performance of public work "undertaken" by the municipality for relief purposes must be "through and under its local emergency work bureau or by its public works or other department under the supervision and control of its local emergency work bureau," for, only when thus performed (§ 11), shall a municipal corporation "*be paid by the State*" a specified percentage of the amount expended for relief to be credited "by such corporation or town *to its general funds*" (§ 16). Sections 23, 24 and 25 provide for the allowance of such claims "by a municipal corporation" against the State to the extent "to which each municipal corporation is entitled."

We have now analyzed those provisions of the Emergency Relief Act which bear directly on the question to be decided, except subdivision 3 of section 16-a which provides for disability allowances to persons injured while engaged in work relief, payment of which "shall relieve the *employing* municipal corporation, town, or State from any and all *further liability* by reason thereof." From that analysis the underlying scheme or purpose of the statute is fairly evident. Because contributions towards relief are to be made by the State, supervision by the State over relief expenditures by municipalities was imposed through local bureaus operating under the control of the State agency. The project is initiated by the legislative body of the municipality (§ 10). When thus initiated, it is the municipality which, in the language of the statute, "may furnish" work relief (§ 9). To pay for such relief its legislative body must appropriate the necessary funds (§ 10). Then only does the State contribute a percentage of the cost by payment to the municipality (§ 25), to be deposited in its general fund. Under these circumstances persons rendering services on such projects have no claim against the State, which has agreed to refund to the municipality a specified percentage of the amount expended for relief if the work has been done under the supervision of the State agency created for that purpose. The liability to the plaintiff, therefore, is exclusively a liability of the city.

The judgment so far as appealed from should be reversed, with costs, and judgment directed in favor of the plaintiff for the amount demanded in the complaint, with costs.

MARTIN, P. J., GLENNON, DORE and COHN, JJ., concur.

Judgment, so far as appealed from, unanimously reversed, with costs, and judgment directed in favor of the plaintiff for the amount demanded in the complaint, with costs. The findings in the decision of the official referee inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.